UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph K. Hashim,<br><br>      Plaintiff,<br><br>-against-<br><br>National Cardiac, Inc., and Event Cardio Group., Inc.<br><br>      Defendants. | 17 Civ. 8097 (NSR)<br><br>ORDER & OPINION |

NELSON S. ROMÁN, United States District Judge:

Plaintiff, Joseph K. Hashim, ("Plaintiff" or "Hashim") commenced this action on October 20, 2017 against National Cardiac, Inc. ("National Cardiac"), Event Cardio Group, Inc. ("ECGI"), and Ambumed, Inc. ("Ambumed") (collectively, "Defendants") to enforce a promissory note ("Note") dated July 8, 2016. (*See* Complaint, ("Compl."), ECF No. 1.) In all, Plaintiff alleges three causes of action against Defendants: (1) breach of the Note; (2) unjust enrichment; and (3) attorneys' fees. Plaintiff filed an Amended Complaint ("AC") on February 5, 2018. (ECF No. 19.) Presently before the Court is Defendants' Motion to Partially Dismiss Plaintiff's Amended Complaint. (ECF No. 26.) For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND

For the purposes of deciding this motion, the following allegations, found in Plaintiff's Complaint, are taken as true. On or about July 8, 2016, ECGI acquired Ambumed through a Stock Purchase Agreement and various closing documents. (AC ¶ 7). Through the Stock Purchase Agreement, ECGI acquired Plaintiff's shares in Ambumed, Inc. and his interests in Capital Cardiac, LLC. (*Id.*)

1

In connection with the sale of his shares, Plaintiff received the Note from Event Cardio Group, dated July 8, 2016, in the amount of $200,000.00, which was subsequently assumed by National Cardiac, as co-obligor in January 2017. (*Id.* ¶ 8.) Pursuant to the terms of the Note, payment was due on July 8, 2017, however, Defendants failed to remit payment. (*Id.* ¶ 9.) Under the terms of the Note, payment was deemed delinquent on July 13, 2017. (*Id.* ¶ 10.)

On or about July 25, 2017, the undersigned sent correspondence advising Defendants of their default and demanding payment of the Note within seven days. (*Id.* ¶ 11.) To date, Defendants have not made any payments in connection with the Promissory Note. (*Id.* ¶ 12.)

Section 2(e) of the Note states: "[t]he Company shall reimburse Holder for reasonable attorneys' fees and expenses incurred in connection with enforcing any provisions of this Note and/or collecting any amounts due under this Note." (*Id.* ¶ 13.)

## PROCEDURAL HISTORY

On October 20, 2017, Plaintiff filed his Original Complaint, which named as defendants National Cardiac, ECGI, and Ambumed. Plaintiff asserted against these Defendants three claims: breach of the Note by failing to make any payments; unjust enrichment by virtue of failing to make the full payment owed under the Stock Purchase Agreement/Note; and entitlement to attorneys' fees pursuant to the terms of the Note.

On December 20, 2017, following a pre-motion conference concerning a potential motion to dismiss, Plaintiff was granted leave to file an amended complaint. On February 5, 2018, Plaintiff filed his AC, in which he abandoned his claims against Ambumed.

The AC sets forth the following Claims for Relief: Defendants breached the Note by failing to make any payments; the Defendants were unjustly enriched by virtue of failing to make

the full payment owed under the Stock Purchase Agreement, which alleged payment obligation as set forth in the Note; and entitlement to attorneys' fees pursuant to the terms of the Note.

Plaintiff seeks all costs, expenses, and attorneys' fees associated with enforcing and collecting on the Note. (*Id*.) Plaintiff also seeks compensatory and exemplary damages in excess of $200,000, pre-judgment interest, attorneys' fees, and costs and disbursements.

## LEGAL STANDARD

### I. Standard for Motion to Dismiss Under Rule 12(b)(6)

A complaint should be dismissed if it does not contain sufficient factual allegations to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 12(b)(6). While a court must accept the material facts of the complaint as true and draw all reasonable inferences in the plaintiff's favor, this "'tenet' 'is inapplicable to legal conclusions.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal v. Ashcroft*, 555 U.S. 662, 678 (2009)). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 555 U.S. at 678). If well-pleaded factual allegations exist, a court must determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Dismissal is warranted "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### II. Unjust Enrichment and Breach of Contract

To establish unjust enrichment, the plaintiff must demonstrate: "'(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Mahoney v.*

*Endo Health Sols., Inc.,* No. 15-CV-9841, 2016 WL 3951185, at* 11 (S.D.N.Y. July 20, 2016); *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012).

Under both New York and Maryland law, unjust enrichment "is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012); *Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 97, 747 A.2d 600, 607 (2000) (citing cases nationwide). "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (1998).

Cases ripe for unjust enrichment claims typically are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. In short, unjust enrichment is not a catchall cause of action and it is not available where it simply duplicates, or replaces, a conventional contract or tort claim. *See id.*; *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.") (internal citations omitted).

Courts only permit plaintiffs to pursue unjust enrichment claims if there is a bona fide dispute as to whether a contract exists or covers the dispute at issue. *Id.*; *Cf. Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (D. Md. 1998); *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014). In contrast, a dispute concerning the scope or interpretation of a contract will not save an unjust enrichment claim from dismissal at the pleadings stage. *See*

*id*. at 472. Such a dispute must actually exist to allow an unjust enrichment claim to survive a motion to dismiss. *Telstar Res. Grp., Inc. v. MCI, Inc.*, 476 F. Supp. 2d 261, 275 (S.D.N.Y. 2007).

## DISCUSSION

Defendants argue that Plaintiff fails to state a claim for unjust enrichment, as no party in this action has raised or will raise a dispute as to the existence, validity, or enforceability of the Note and Stock Purchase Agreement, both of which Plaintiff discusses in his AC. (*See* Defendants' Memorandum, ("Def. Mem."), at 3, ECF No. 27; Defendants' Reply Memorandum, ("Def. Rep."), at 3, ECF No. 31.) Therefore, there is a valid contract governing the dispute and the unjust enrichment claim is duplicative. (Def. Mem. at 3-4.)

Plaintiff argues that while an unjust enrichment claim may not lie where it is merely duplicative of a breach of contract claim, that is not the case here because although its unjust enrichment claim stems from the same *facts* of the breach of contract claim, it is seeking more than damages from Defendants' failure to repay the Note. (Plaintiff's Memorandum, ("Pl. Mem."), at 4, ECF No. 30.) Plaintiff claims that Defendants have been unjustly enriched as a result of acquiring Plaintiff's shares of Ambumed, for which they did not pay, and which increased in value after the acquisition. (*Id.*)

Plaintiff argues that these damages are separate and apart from the $200,000.00 Defendants owe Plaintiff under his first claim for relief. (*Id.*) Further, they argue that the Federal Rules of Civil Procedure permit alternative pleadings at this stage of the litigation. *See* Fed.R.Civ.P. (8)(d). (*Id*. at 5.)

The Court agrees with Defendants. The Note and Promissory Agreement govern this dispute, and Plaintiff has pleaded so much. Plaintiff's AC states "Section 2(e) of the Promissory

5

Note states that: '[t]he Company shall reimburse Holder for reasonable attorneys' fees and expenses incurred in connection with enforcing any provisions of this Note and/or collecting any amounts under this Note.'" (AC at ¶ 13.) Plaintiff then, in Claim 1, discusses how "a valid contract exists between Plaintiff and Defendants" and how "Plaintiff has performed all of his obligations under the Promissory Note" whereas Defendants "breached the Promissory Note" entitling Plaintiff to damages) (*Id*. at ¶¶ 13-19). Plaintiff, in Claim 2, then incorporates by reference each allegation already pleaded as the basis for unjust enrichment. (*Id*. at ¶¶ 21-24.)

Regardless of whether that dispute is governed by Maryland or New York Law, both apply exactly the same way and preclude duplicative unjust enrichment claims exactly like Plaintiff's. *Cty. Comm'rs of Caroline Cty.*, 358 Md. at 97. ("'[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract [*i.e.,* unjust enrichment] for events arising out of the same subject matter.") Therefore, Plaintiff's unjust enrichment claim is duplicative.

As discussed, the typical unjust enrichment case involves a party who retains money to which he is not entitled despite the fact that he has not committed a recognized tort or breached a contract. Here, the accusations surrounding the Plaintiff's unjust enrichment claim overlap with his breach of contract claim, which will proceed in the litigation. He therefore may not bring an unjust enrichment claim a collateral cause of action.

## CONCLUSION

For the reasons discussed, Defendants' Motion to Partially Dismiss the Complaint is GRANTED. The Clerk of the Court is respectfully directed to terminate the Motion at ECF No. 26. Defendants are directed to answer the Amended Complaint by March 30, 2019. The parties are directed to submit a joint case management plan to the Court by April 12, 2019, the form for which is attached heretofore.

SO ORDERED.

Dated:   March 8, 2019
         White Plains, New York

                                        NELSON S. ROMÁN
                                        United States District Judge

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  

Rev. Jan. 2012

-----------------------------------------------------------x

                         Plaintiff(s),

**CIVIL CASE DISCOVERY PLAN  
AND SCHEDULING ORDER**

- against -

                         Defendant(s).      _____ CV _____ (NSR)

-----------------------------------------------------------x

       This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge